# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**MARY LOIS HAWKINS**                                                                 **PLAINTIFF**

**v.**                                    **CASE NO. 4:05-CV-1002 GTE**

**COUNSELING ASSOCIATES, INC.**                                        **DEFENDANT**

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Presently before the Court are Defendant's Motion for Summary Judgment and

Defendant's Supplemental Motion for Summary Judgment.[1]

## I.      Background & Alleged Facts

### A.  Motion for Summary Judgment

Plaintiff Mary Lois Hawkins, an African-American female, began working for Defendant

Counseling Associates Inc., a non-profit corporation providing professional counseling and

mental health services, on July 20, 1992.[2]  Plaintiff alleges that she has been diagnosed with

severe allergies known as chronic sinus disease, and allergic rhinitis with a vasomotor

---

[1]The Court notes that not all of the Exhibits to Plaintiff's Response to Defendant's
Motion for Summary Judgment were sufficiently identified, some pages were redundant, and
most pages were filed out of order.  Therefore, the Court assigns the following to Plaintiff's
Exhibits to her Response to Defendant's Motion for Summary Judgment for purposes of
clarification of the record: Exhibit 1 - Memo (Docket No. 22-2); Exhibit 2 - Letter dated
November 28, 2004 (Docket No. 22-2); Exhibit 3 - Letter dated September 27, 2004 (Docket No.
22-2); Exhibit 4 - Photographs (Docket No. 22-3); Exhibit 5 - Declaration of Mary L. Hawkins;
Exhibit 6 - Hawkins Deposition (includes pages 1-2, 46, 57-64, 73-77, 79, 91-92, and 99)
(Docket Nos. 22-7, 22-8, 22-9, 22-10, and 22-13); and Exhibit 7 - Skaggs Deposition (includes
pages 1, 2, 29, 31-33, 36, and 59) (Docket Nos. 22-11 and 22-12).

[2]*See* Defendant's Statement of Undisputed Facts ¶ 1-2; Plaintiff's Statement of
Undisputed Facts ¶ 1-2.

component, which causes her to experience adverse effects, including headaches, respiratory distress, difficulty breathing, and nasal congestion from exposure to strong scents, smells, and odors.[3]  Plaintiff states that she has been suffering from this condition since 1995.[4]

Plaintiff alleges that on several occasions she brought to her supervisor's and other manager's attention that certain products used by employees in the workplace, including strongly scented burning candles, perfume, cologne, cleaning solvents and sprays, hairspray, and fresh flowers, were offending her by triggering severe allergic reactions.[5]  She states that on at least two occasions, a memo[6] was posted for employee notification to refrain from using such items.[7]  She states that a handwritten reply to one such memo, which stated "What about medicated foot powder for my athlete's feet?," inferred that the request was silly, and an unnecessary infringement on the "rights" of all other employees.[8]  She also alleges that other employees would deliberately wear stronger scents, spray substances within close proximity to her work

_____

[3]*See* Plaintiff's Response to Defendant's Statement of Undisputed Facts ¶ 2.

[4]*See* Plaintiff's Response to Defendant's Statement of Undisputed Facts ¶ 2.

[5]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[6]Plaintiff's Exhibit 1 appears to be one of the posted memos, and states, "I have been made aware that several of our employees are sensitive/allergic to certain smells.  I am asking that you refr[ain] from wearing perfume or cologne at Park Place.  It is also important that you do not burn candles."  Another such memo, dated October 22, 2001, is submitted by Defendant, and states, "I am asking that candles not be burned in the building when Mary is at work.  This is causing her to be ill and have to take off work.  I know we will all be respectful as we would want others to be for us.  Thanks ahead of time."  *See* Exhibit D, Skaggs Aff., Defendant's Motion.

[7]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[8]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

area, burn multiple scented candles, and use hairspray in the closest women's restroom available to her.[9]

Plaintiff claims that she renewed her objection to management, requesting accommodation by the elimination of offensive products, and their response was for her to move from her work area to a hallway away from her coworkers, and the materials necessary for her to accomplish her work.[10] Plaintiff states that she considered the move, and its implications, but declined because it would do little to abate the problem of the use of strong scents and odors in the workplace.[11] Plaintiff states that she attempted to remedy the problem for herself by bringing fans from home, but that on one occasion when she returned to work from an absence, she found that her personal fan had been disassembled and left on top of her desk, and she was unable to locate a fan that belonged to Defendant.[12]

Plaintiff states that a client seeking services in the office had to leave and breath fresh air to stop a coughing fit that had ensued due to the strong perfume scent another employee had recently sprayed in the office.[13] Plaintiff states that she took photographs of the candles and lotion in the office of Laura Reahard, air deodorizers and cleaning solvents in the women's restroom, the fan she finally located, multiple candles on the desk of Rhomie King, her

---

[9]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[10]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[11]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[12]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[13]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

supervisor, a burning candle on the desk of Steve Newsome's secretary; and another burning

candle on the desk in Jennie Beene's office.[14]

Plaintiff alleges that on November 28, 2004, she formalized her complaints about strong

scent and odors in the workplace, by sending a memo to Mr. Steve Newsome, Defendant's CEO,

which states:

> The purpose of this letter is to inform you of my severe allergies and the problems
> I am having with the strong odors and the effect it has on my ability to do my job.
> I know I can't avoid all scents but I feel what I am experiencing has become
> harassment, discrimination, and a form of retaliation. Also I've noticed the scents
> are worse when you are not in the office, for instance Friday November 19, 2004
> there were not any scents in the air but about 4:15 p.m. there was a strong scent of
> perfume outside my doorway.
>
> There were two memos posted regarding the smells, but they were ignored and the
> problem seems to have gotten worse lately instead of better. When I came to Park
> Place in August of 2004 the office went from no scents to very strong scents that I
> know have been directed toward me as a means of retaliation from my superiors.
>
> I have enclosed a letter from my doctor regarding my problem with the scents.

The letter from Dr. Collie Shaw states that Plaintiff had been treated with medications and

immunotherapy (allergy shots) for chronic sinus disease and allergic rhinitis with a vasomotor

component since 1995.[15] Dr. Shaw details the symptoms of her chronic sinus conditions as runny

nose, watery eyes, headaches, and nasal congestion, which "seem to be worsened by strong

---

[14]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response. The Court notes that Plaintiff's
Exhibit 4 contains a photograph of two candles on a desk, the fan on top of a filing cabinet, and
"odor neutralizer" and cleaning supplies in a restroom.

[15]*See* Exhibit 3, Plaintiff's Response.

smells, such as perfumes or strong chemical odors, sudden changes in temperature or humidity, as with all patients with her problems."[16]

On April 15, 2005,[17] Plaintiff filed an EEOC charge against Defendant alleging race discrimination in her workplace. Specifically, Plaintiff alleged that she had sinus disease and allergic rhinitis.[18] She stated that she had "complained to management about the candles, perfumes, etc [i]n the office," but that she continued "to be subjected to such scents and smells."[19] She further states that "[t]wo memos have been sent to employees asking them not to burn candles or wear perfumes or scented lotions, however, they still continue. A White female employee had sinus problems and her direct co-worker no longer wears perfume."[20] She concludes by stating, "I believe I am subjected to different terms and conditions of employment because of my race, Black [i]n violation of Title VII of the Civil Rights Act of 1964, as amended."[21]

On July 20, 2005, Plaintiff brought her *pro se* Complaint in this Court alleging that she was discriminated against because of her race by her employer, Counseling Associates, in violation of Title VII of the Civil Rights Act of 1964. On August 24, 2005, the Court, in

---

[16]*See* Exhibit 3, Plaintiff's Response.

[17]Although Defendant alleges that Plaintiff filed her EEOC charge on April 15, 2004, Exhibit E plainly states the date as April 15, 2005. *See* Exhibit E, Defendant's Motion for Summary Judgment (hereafter "Defendant's Motion).

[18]*See* Exhibit E, Defendant's Motion.

[19]*See* Exhibit E, Defendant's Motion.

[20]*See* Exhibit E, Defendant's Motion.

[21]*See* Exhibit E, Defendant's Motion.

considering a Motion for Appointment of Counsel, stated that it had serious doubts as to the merits of Plaintiff's allegations of a hostile work environment. Additionally, the Court notified Plaintiff that "[i]n reviewing Plaintiff's lengthy, hand-written, pro se Complaint, it appears that she has included in her Complaint before this Court allegations other than and in addition to those presented to the EEOC in her Charge of Discrimination." The Court noted that administrative exhaustion requires that before pursuing Title VII claims in court, a plaintiff must first present such claims to the EEOC. The Court stated, "Thus, Plaintiff is placed on notice that she may only seek relief in this Court 'for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in [her] administrative charge." The Court held Plaintiff's Motion to Appoint Counsel in abeyance, but later terminated the motion as moot due to the entry of appearance of Plaintiff's current attorney. On April 5, 2006, Defendant filed its Motion for Summary Judgment.

**B. Supplemental Motion for Summary Judgment**

Plaintiff alleges that on or about February 1, 2006, she was demoted and her salary was reduced, and that the reason given for this reduction was that she did not succeed in obtaining HUD certification after completing a training course, which was to equip her for handling HUD billing or rent collection.[22] She states that these duties were removed from her area of responsibility on or after February 1, 2006, and reassigned to other non-minority employees without HUD certification, and that in the Defendant's Russellville facility, the HUD duties are performed by a non-minority employee without HUD certification.[23] Plaintiff states that she was

---

[22]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[23]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

not told that HUD certification was a requirement for the job before she applied or was

selected.[24]  Plaintiff states that she objected to the demotion and wage reduction to no avail.[25]

On June 21, 2006, Plaintiff was discharged from her employment.  On June 23, 2006,

Plaintiff moved to amend her complaint, and filed an amended motion to amend her complaint

on July 24, 2006.  On July 10, 2006, Plaintiff filed her second EEOC charge alleging

discrimination between June 13, 2006 and June 21, 2006.[26]  The Court granted Plaintiff's Motion

to Amend and Amended Motion to Amend on August 9, 2006, "solely to add the claim of

retaliatory termination" finding that the retaliatory discharge claim "'grew out of' her pending

discrimination claims that Plaintiff alleged in her EEOC complaint."[27]  Plaintiff filed her

---

[24]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[25]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[26]*See* Exhibit F, EEOC charge dated 7/10/06, Defendant's Supplemental Motion for Summary Judgment (hereafter "Supplemental Motion").

[27]  The Court recognizes that in *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661,  672-74 (8th Cir. 2006) (internal citations omitted), the Eight Circuit stated:

> We have . . .  considerably narrowed our view of what is "like or reasonably related" to the originally filed EEOC allegations. While at one time, this judicial exception to the exhaustion doctrine permitted a finding that a subsequent retaliation claim growing out of an EEOC age discrimination complaint was sufficiently related to be within the scope of the lawsuit, we have subsequently recognized that "retaliation claims are not reasonably related to underlying discrimination claims." Further informing our use of this doctrine, the Supreme Court has indicated that a discrete act of discrimination constitutes a separate actionable employment practice, and each discrete act starts a new clock for filing charges based upon it.
> . . .
> Guided by the principles set forth in *Morgan,* we continue to adhere to a narrow reading of this exhaustion exception, but we decline, on the facts before us, to abandon it *in toto* where the subsequent retaliatory acts were of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an

Amended Complaint on August 23, 2006.  On February 23, 2007, Defendant filed its

Supplemental Motion for Summary Judgment, and renewed and incorporated its first Motion for

Summary Judgment.

## II.     Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most

favorable to the non-moving party, there is no genuine issue as to any material fact, so that the

dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.

1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in

determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a
> need for trial-- whether, in other words, there are genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary

judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate,
> i.e., '[to] point[] out to the District Court,' that the record does not disclose a
> genuine dispute on a material fact.  It is enough for the movant to bring up the fact

_____

ongoing and continuing nature.

While the Court recognizes that the Eighth Circuit has stated that retaliation claims are generally
not reasonably related to underlying discrimination claims, Plaintiff's July 10, 2006, EEOC
charge and her December 4, 2006, right to sue letter demonstrate that Plaintiff has adequately
exhausted her administrative remedies with regard to her charge of retaliatory termination,
independent of her discrimination claims.  Additionally, judicial economy is furthered by the
consideration of the hostile work environment, discrimination, and termination claims in one
action.  Therefore, the Court will consider the termination claim.

that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988)) (citations omitted)(brackets in original).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. Rule 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

### III.  Motion for Summary Judgment

#### A.  Hostile Work Environment

To establish a hostile work environment claim, Plaintiff must show (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic under Title VII, (4) the harassment affected a term, condition or privilege of employment, and (5) employer liability.  *Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005).  "To establish the fourth element, a plaintiff must prove that the harassment was 'so severe or pervasive as to alter a term, condition, or privilege of employment.'" *Gilooly v. Missouri Dep't of Heath and Senior Servs.*, 421 F.3d 734, 738 (8th Cir. 2005).  "The conduct at issue must not be 'merely rude or unpleasant.'" *Id.*  "A plaintiff must establish harassment that is 'so intimidating, offensive, or hostile that it poisoned the work environment.' " *Id.*  "A plaintiff must be able to show that 'the workplace [was] permeated with discriminatory intimidation, ridicule, and insult'" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.*; *Al-Zubaidy*, 406 F.3d at 1038.  "Offhand comments and isolated incidents of offensive conduct (unless extremely serious) do not constitute a hostile work environment."  *Burkett*, 327 F.3d 658, 662 (8th Cir. 2003) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 786-88, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).  The Court can determine "whether an environment is 'hostile' or 'abusive' ⋯ only by looking at all the circumstances[, which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Al-Zubaidy*, 406 F.3d at 1038.

Plaintiff urges the Court to consider her claim for relief under a hostile work environment theory[28] on the basis of both race discrimination and disability discrimination. Although Plaintiff's EEOC charge did not select the disability category, Plaintiff stated that she had "sinus disease and allergic rhinitis." In *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-21, 122 S. Ct. 2061, 2073-76 (2002), the Supreme Court explained that "[p]rovided that *an act contributing to the claim* occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability," although the Court recognized that employers have recourse when a plaintiff unreasonably delays filing a charge. (emphasis added). The Supreme Court seems to broaden the scope of facts considered when analyzing a hostile work environment claim, as opposed to claims based on discrete discriminatory or retaliatory acts, because "[h]ostile environment claims are different in kind from discrete acts" and "[t]heir very nature involves repeated conduct." *Id.* at 115, 122 S. Ct. at 2073. Therefore, the "'unlawful employment practice' [] cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* Because the consideration of these allegations does not change the Court's final decision, the Court will assume, without deciding, that Plaintiff has exhausted her administrative remedies with respect to these claims in the hostile work environment context. Therefore, the Court will consider her allegations of disability discrimination under a theory of hostile work environment. As the Eighth Circuit has

---

[28]As discussed above, the Court has previously construed Plaintiff's claims as based upon a theory of hostile work environment. Although Plaintiff titles her argument section "Discrimination based on race," her citations to authority and arguments center around a hostile work environment theory. Therefore, the Court will analyze Plaintiff's claims under this theory.

done, this Court will assume that a disability-based cause of action for discrimination under a hostile work environment theory exists.  *See Jeseritz v. Potter*, 282 F.3d 542, 547 (8th Cir. 2002).

In support of her hostile work environment claim, Plaintiff states that she was passed over for vacant positions and did not receive the same access to training or orientation activities as other non-minority employees.[29]  Plaintiff also states that she was required to obtain HUD certification upon entry into a new position, although her predecessor was not required to obtain such certification, and her pay was reduced when she failed to obtain HUD certification, which was inconsistent with prior practices since her employer did not consider her length of employment in reducing her pay.[30]  Plaintiff also states that "the discrimination she experiences

---

[29]Plaintiff offers these facts as the "backdrop" to her allegations surrounding the "scents" and "smells" that allegedly aggravated her as chronic sinus disease, and allergic rhinitis with a vasomotor component and allegedly demonstrate racial animus.  The Court questions whether Plaintiff has properly exhausted her administrative remedies regarding these allegations, especially considering the fact that Plaintiff has not provided dates associated with these alleged events.  It appears that these facts likely reference Plaintiff's alleged lack of training in 2001 when she worked at the office for two weeks.  *See* Exhibit A, Hawkins Dep. p. 42, Defendant's Motion. Plaintiff's EEOC charge is dated April 15, 2005.

However, as discussed previously, the Supreme Court's ruling in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-21, 122 S. Ct. 2061, 2073-76 (2002), explained that "[p]rovided that *an act contributing to the claim* occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." (emphasis added).  As with Plaintiff's disability-related hostile work environment claims, because the consideration of these allegations does not change the Court's final decision, the Court will assume, without deciding, that Plaintiff has exhausted her administrative remedies with respect to these claims in the hostile work environment context.

[30]  The Court questions whether these facts should be considered in this section because it appears that these facts refer to a demotion that occurred on February 1, 2006, approximately ten months after Plaintiff filed her EEOC charge and over six months after she filed her complaint in this Court.  While in *Morgan*, the Supreme Court stated, "Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole," it may be the case that the factual basis for the claim must occur prior to the date on which the Plaintiff files an EEOC charge.  536 U.S. at 117, 122 S. Ct. at 2074.  However, because the consideration of these facts does not change the Court's final decision, the

relative to the lack of accommodation for her disability also has its origins in racial animus, since a non-minority employee was accommodated by the cessation of strong odors while she was recovering from a sinus infection, but Ms. Hawkins continues to experience exposure."

The Court also considers Plaintiff's allegations, discussed above, that she brought to her supervisor's and other manager's attention that certain products used by employees in the workplace were offending her by triggering severe allergic reactions.[31]  Also, as discussed above, Plaintiff alleges that despite two memos posted by management to refrain from using such items,[32] other employees would deliberately wear stronger scents, spray substances within close proximity to her work area, burn multiple scented candles, and use hairspray in the closest women's restroom available to her.[33]  The Plaintiff also states that she declined to accept Plaintiff's offer to move her workspace because it would not remedy the problem, and alleges that her fans were removed from her workspace.[34]

Defendant argues that Plaintiff's allegation that Rhonda Standridge, a non-minority receptionist, was accommodated by the cessation of strong odors while she was recovering from a sinus infection has been proven false.  Specifically, Defendant states that Plaintiff claimed that Ms. Standridge told her that "I was off for some sinus and stuff.  So the doctor gave me

_____

Court will assume, without deciding, that it is appropriate to consider these facts in the hostile work environment context.

[31]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[32]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[33]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

[34]*See* Exhibit 5, Hawkins Decl., Plaintiff's Response.

antibiotics and stuff," and that the entire time Ms. Standridge was off of work, and the days immediately following, the office was free of scents and smells.[35]  Defendant also states that Plaintiff has no further knowledge of Ms. Standridge's medical condition or treatment, whether Ms. Standridge has an allergy or sinus problem, or whether Ms. Standridge requested the cessation of any scents and smells around the workplace.[36]  Furthermore, Defendant submits the Affidavit of Ms. Standridge, in which she states that she had no such allergy or sensitivity to smells at the time she worked for the Defendant, did not tell Ms. Hawkins that she had to be off work to go to the doctor for sinus or other allergy problems, and was disappointed that she and the other office employees were told to quit burning candles or wearing perfume as a result of Ms. Hawkins' request, because she enjoyed such scents.[37]

Defendant further argues that it has taken exhaustive steps to remedy the complaints made to it by the Plaintiff regarding the allegedly strong-scented environment.  Defendant states that management made an affirmative effort to try to accommodate the Plaintiff, and that the scents and smells would stop on occasion.[38]  Specifically, employees were asked by management, as a whole and individually, to stop wearing perfume.[39]  Furthermore, employees were asked not

---

[35]*See* Exhibit A, Hawkins Dep. p. 18-20, Defendant's Motion.

[36]*See* Exhibit A, Hawkins Dep. p. 20, 25, Defendant's Motion.

[37]*See* Exhibit C, Standridge Aff. ¶ 5-6, 9, 12, Defendant's Motion.

[38]*See* Exhibit A, Hawkins Dep. p. 61, Defendant's Motion. ("Q.  And she made an affirmative effort to try to accommodate you?  A.  Uh-huh.")

[39]*See* Exhibit A, Hawkins Dep. p. 60, Defendant's Motion.

to burn candles.[40]  On two specific occasions, memos/signs were put up by the management

requesting that employees stop wearing scents and burning candles.[41]  Management began using

scent-free Lysol in the bathroom.[42]  Management offered to allow Plaintiff to move her office

away from the persons she complained had the strongest scents and suggested that Plaintiff bring

an air purifier to work, but Plaintiff chose voluntarily not to move her office or bring an air

purifier.[43]  Additionally, when Plaintiff would make reports or requests to her superiors,

complaining of scents, the reports were immediately investigated.[44]

Defendant also submits communications regarding their efforts to accommodate Plaintiff,

some of which are summarized as follows:  An e-mail dated November 21, 2002, from Steve

Newsome to Brynda Lilley, and copied to Diane Skaggs, states that Plaintiff needs to submit a

doctor's order regarding her condition and any suggestions.[45]  The e-mail further states, "I want

to stop the use of aerosol sprays in the building," and requests that a regular schedule of changing

or cleaning the filters in the building be implemented.[46]  Handwritten notes indicate that on

---

[40]*See* Exhibit A, Hawkins Dep. p. 60, Defendant's Motion.

[41]*See* Exhibit A, Hawkins Dep. p. 52, Defendant's Motion; Exhibit D, Skaggs Aff., Defendant's Motion.

[42]*See* Exhibit B, Skaggs Dep. p. 52, Defendant's Motion.

[43]*See* Exhibit A, Hawkins Dep. p. , Defendant's Motion.

[44]*See* Exhibit A, Hawkins Dep. p. 78, Defendant's Motion; Exhibit B, Skaggs Dep. p. 48, Defendant's Motion.

[45]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

[46]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

August 11, 2003, management discussed training with Plaintiff and Julia Beldyga.[47] Management's notes dated August 15, 2003, indicate that Julia Beldyga "trained all week with Mary," and that management met with Plaintiff to see how her training was going and informed Plaintiff that Ms. Beldyga will train Plaintiff from August 18, 2003 through August 22, 2003.[48] A note dated August 29, 2003, indicates that Plaintiff informed management that the two weeks of training was adequate.[49] A note dated November 20, 2003, indicates that management informed an employee that the employee's perfume was making Plaintiff sick, but that the employee told management that she did not wear perfume.[50] The note also indicates that Plaintiff informed management that smells in the office were making her sick and that she was going home, but that upon inspection by management, no candles were burning, no employee had sprayed anything down the hall, and that the only smell was from the employees' lunches in the kitchen.[51]

A note dated January 27, 2004, indicates that Billy York reported to management that Plaintiff asked her to refrain from wearing perfume, and that Ms. York agreed not to wear perfume to work.[52] A note dated February 26, 2004, reports that Plaintiff asked Kasey Reed to refrain from wearing perfume, but that Ms. Reed informed management that "she wears a body

---

[47]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

[48]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

[49]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

[50]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

[51]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

[52]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

mist as part of her daily hygiene because she sweat a lot," "does not wear perfume," and was offended because she felt like she was not clean if she did not put on light body mist."[53]  A note dated March 5, 2004, states that Ms. Skaggs met with Ms. Clark about Plaintiff's sensitivity to smells, and that Ms. Clark asked staff not to burn candles, spray Lysol, or wear cologne or perfume.[54]  Additionally, Ms. Clark stated that she bought spray without a smell and that the only smell she is aware of is that from the kitchen when the staff eats their lunch.[55]  On April 2, 2004, management was informed that Plaintiff met with Shirley Beck and requested that Ms. Beck not wear perfume, but that Ms. Beck told Plaintiff that she was only wearing hand lotion.[56]  A note dated May 19, 2004, signed by Joyce Clark and Stacy Davis, indicates that Ms. Clark met with Ms. Davis and requested that she not wear perfume, body spray, or lotion, and that Ms. Davis agreed to refrain from the use of such products.[57]

Taking the facts in a light most favorable to the Plaintiff, Plaintiff fails to offer evidence of harassment that was "sufficiently severe or pervasive to create an objectively hostile work environment."  *Wright v. Rolette County*, 417 F.3d 879, 885 (8th Cir. 2005).  Additionally, Plaintiff fails to offer sufficient evidence that the alleged harassment was related to her race.

---

[53]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

[54]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

[55]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

[56]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

[57]*See* Exhibit D, Skaggs Aff., Defendant's Motion.

Furthermore, Plaintiff's allegations surrounding Ms. Standridge are unsupported.[58]  No jury could reasonably conclude that Defendant's actions created a hostile work environment.  The Court grants summary judgment on this issue.

**B.  Disability Discrimination and Reasonable Accommodation**

Defendant argues that Plaintiff failed to exhaust her administrative remedies regarding any claim of discrimination based on disability and lack of reasonable accommodation. Defendant argues that claims of disability discrimination and lack of reasonable accommodation should not be considered by the Court because Plaintiff's EEOC charge solely asserted the claim of scents and smells in the workplace subjecting the Plaintiff to different terms and conditions of her employment because of her race as an African American.  Alternatively, Defendant argues that the claim of discrimination by Plaintiff has been proven untrue with the Affidavit of Ms. Standridge, the record demonstrates the efforts made by the Defendant and its employees to "deal with the unfounded complaints of the Plaintiff" and accommodate her, and that no discrimination occurred.

**1.  Exhaustion of Administrative Remedies**

"A Title VII plaintiff must exhaust administrative remedies before bringing suit in federal court."  *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006).  "A claimant must first timely

---

[58]Although the Plaintiff has not attempted to raise this issue, even if the Court were to consider the allegations regarding Ms. Standridge in a disparate treatment context, Plaintiff's claims would fail because she cannot prove that Ms. Standridge was similarly situated and that Ms. Standridge was treated differently.  *See Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998); *Ward v. Procter & Gamble Paper Prods. Co.,* 111 F.3d 558, 560-61 (8th Cir. 1997).

file an administrative charge with the EEOC." *Id.* (citing 42 U.S.C. § 2000e-5(e); *Nichols v. Am. Nat'l Ins. Co,* 154 F.3d 875, 886 (8th Cir. 1998)). "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Id.* (citing 29 C.F.R. § 1601.12(b)). "If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because 'the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'" *Id.* (citing *Nichols,* 154 F.3d at 887). "Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Id.* (citing *Kells v. Sinclair Buick-GMC Truck, Inc.,* 210 F.3d 827, 836 (8th Cir. 2000); *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 223 (8th Cir. 1994)).

Although the Court will "liberally construe an administrative charge for exhaustion of remedies purposes, [the Court] also recognize[s] that 'there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo,* a claim which simply was not made.'" *Id.* at 635 (citing *Parisi v. Boeing Co.,* 400 F.3d 583, 585 (8th Cir. 2005) (quoting *Shannon v. Ford Motor Co.,* 72 F.3d 678, 685 (8th Cir. 1996))). Additionally, the Eighth Circuit has "considerably narrowed [its] view of what is 'like or reasonably related' to the originally filed EEOC allegations." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 672 (8th Cir. 2006). However, the Eighth Circuit does "not require that subsequently-filed lawsuits mirror the administrative charges as long as the sweep of any subsequent judicial complaint is no broader

than the scope of the EEOC investigation which could reasonably be expected to grow out of the charge filed in the EEOC complaint. *Id*. at 674 (internal quotations omitted).

As discussed above, Plaintiff's EEOC charge alleged that she had sinus disease and allergic rhinitis, and described her complaints regarding the "scents and smells" in her office.[59] She stated that she had "complained to management about the candles, perfumes, etc [i]n the office," but that she continued "to be subjected to such scents and smells."[60] She further states that "[t]wo memos have been sent to employees asking them not to burn candles or wear perfumes or scented lotions, however, they still continue. A White female employee had sinus problems and her direct co-worker no longer wears perfume."[61] However, Plaintiff's conclusion states, "I believe I am subjected to different terms and conditions of employment because of my race, Black [i]n violation of Title VII of the Civil Rights Act of 1964, as amended," and Plaintiff did not check the disability box on her EEOC charge.[62] While Plaintiff's *pro se* Complaint in this Court alleges that she was discriminated against because of her race by her employer, Plaintiff states that there was not a space on the form for a claim under the Americans with Disabilities Act, but that Plaintiff details her allegations surrounding discrimination based on disability and lack of accommodation in her narrative statement.

---

[59]*See* Exhibit E, Defendant's Motion.

[60]*See* Exhibit E, Defendant's Motion.

[61]*See* Exhibit E, Defendant's Motion.

[62]*See* Exhibit E, Defendant's Motion.

In *Russell v. TG Missouri Corp.*, 340 F.3d 735 (8th Cir. 2003), the Eighth Circuit considered whether a plaintiff exhausted her administrative remedies with respect to her retaliation claim. There, the plaintiff marked the boxes labeled "sex" and "disability" with an "X," but failed to mark the box labeled "retaliation." *Id.* at 740. The court concluded that the plaintiff could not rely on her disability discrimination claim to show that she exhausted her administrative remedies with respect to her retaliation claims because "it is well established that retaliation claims are not reasonably related to underlying discrimination claims." *Id.* at 747-48 (quoting *Wallin v. Minn. Dep't of Corrections*, 153 F.3d 681, 688 (8th Cir. 1998)). Additionally, in the section of plaintiff's EEOC charge labeled "THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s))," Plaintiff typed, "I believe Respondent wanted to fire me because I could only work 8 hours a day, 5 days a week due to my condition." *Id.* at 740. The court also concluded that plaintiff's retaliation claim was not reasonably related to her typed statement in the EEOC charge, and that the plaintiff failed to exhaust her administrative remedies for purposes of her retaliation claim, stating:

> To satisfy the exhaustion requirement, the statement in question must provide
> sufficient notice of [plaintiff's] retaliation claim. *See Wallin,* 153 F.3d at 688 ("
> 'Allowing a complaint to encompass allegations outside the ambit of the predicate
> EEOC charge would circumscribe the EEOC's investigatory and conciliatory role,
> as well as deprive the charged party of notice of the charge, as surely as would an
> initial failure to file a timely EEOC charge.' ") (quoting *Williams v. Little Rock
> Mun. Water Works,* 21 F.3d 218, 233 (8th Cir.1994)). The statement in question
> arguably does provide notice that retaliation is being alleged; however, it suggests
> that retaliation was a motive for [plaintiff's] termination, not for the overtime
> assignment that she now claims was the retaliatory act. *See* Appellant's Appendix
> at 13 (Complaint, ¶ 30) (alleging TG Missouri retaliated against her "by
> scheduling her to work in excess of 40 hours per week by requiring her to come in
> on the weekend"). [Plaintiff's] retaliation claim, as asserted in the present
> litigation, is therefore not reasonably related to the substance of her allegations in
> the administrative charge. *Cf. Stuart,* 217 F.3d at 631 (explaining that where the

plaintiff alleged in her EEOC charge that she was *terminated* in retaliation for engaging in protected activity, she had not exhausted her administrative remedies with respect to a claim that she had been *disciplined* in retaliation for engaging in protected activity).

Finally, as the District Court observed, [plaintiff] has not alleged that the retaliation resulted from her filing the administrative charge. The alleged retaliation occurred well before the administrative charge was filed. We therefore further conclude that Russell's retaliation claim does not grow out of the substance of her allegations in the administrative charge. *See Wallin,* 153 F.3d at 688-89 (retaliation claim did not grow out of the substance of the allegations in the administrative charge where the alleged retaliation "was not the result of [the plaintiff's] filing of the EEOC charge" and "occurred at the same time as the alleged discrimination, long before he filed a charge of discrimination with the EEOC.").

*Id*. at 748.

The facts of this case are somewhat distinguishable from those in *Russell*. In *Russell*, while the court acknowledged that the statement in question arguably provided notice that retaliation was being alleged, the retaliatory act alleged in the EEOC charge was plaintiff's termination, rather than the overtime assignment plaintiff later cited as the retaliatory act. *Id*. at 748. Here, however, Plaintiff's allegations in her EEOC charge and her current allegations supporting a claim for disability discrimination and lack of reasonable accommodation are substantially the same - the lack of response to the issue of "scents and smells" in her office despite her sinus disease and allergic rhinitis and complaints to management.

While this is a close question, the Court finds that the statements in the narrative section of Plaintiff's EEOC charge provided sufficient notice of Plaintiff's disability discrimination and lack of reasonable accommodation claims. In its August 24, 2005, Order, the Court stated, "Plaintiff is placed on notice that she may only seek relief in this Court 'for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in [her]

administrative charge." Because the Court has found that the Plaintiff's EEOC charge provided adequate notice of these claims, these claims "grow[] out of or [are] like or reasonably related to the substance of the allegations in [her] administrative charge." Therefore, Plaintiff has exhausted her administrative remedies with regard to her disability discrimination and lack of reasonable accommodation claims. However, as discussed below, the Court will not consider the alleged February 2006 demotion in considering Defendant's Motion for Summary Judgment.

## 2. Discrimination based on Disability

With regard to Plaintiff's disability discrimination claims, the ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual." *Thompson v. Bi-State Development Agency*, 463 F.3d 821, 824 (8th Cir. 2006) (citing 42 U.S.C. § 12112(a); *Brunko v. Mercy Hosp.,* 260 F.3d 939, 941 (8th Cir.2001)). Absent direct evidence of retaliation, we must apply the *McDonnell Douglas*[63] three-part burden-shifting analysis to Plaintiff's claim. *Id*. at 824-25 (citing *Baucom v. Holiday Cos.,* 428 F.3d 764, 766 (8th Cir. 2005)). Under this burden-shifting framework, the Court must first determine whether Plaintiff has presented a prima facie case of discrimination; next, whether the Defendant rebutted the prima facie case by articulating a legitimate, non-discriminatory reason for the action it took; and finally, whether Plaintiff met her burden to prove Defendant's proffered justification was merely a pretext for discrimination. *Id.* at 825.

In order to establish a prima facie case of discrimination under the ADA, Plaintiff is

---

[63]*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).

required to show that 1) she is disabled within the meaning of the ADA; 2) she is qualified to perform the essential functions of the job, with or without accommodation; and 3) she has suffered an adverse employment action due to her disability. *Thompson*, 463 F.3d at 825. The Court assumes, without deciding, that Plaintiff has a qualifying disability[64] and that she is qualified to perform the essential functions of her job.

With regard to the third prong, "[a]n employee suffers an adverse employment action when there is a 'tangible change in duties or working conditions' constituting 'a material employment disadvantage.'" *Baucom v. Holiday Cos*., 428 F.3d 764, 767 (8th Cir. 2005) (holding that plaintiff's claims that his hours were cut resulting in a 20% cut in take home pay failed because he did not set forth facts demonstrating that his employer decreased his hours rather than the plaintiff voluntarily taking vacation and sick leave, and even if such facts were present, the slight decrease in hours did not constitute as a matter of law an adverse employment action). The Court notes that its analysis on this issue is hampered by the fact that Plaintiff continually references separate causes of action, namely hostile work environment and lack of reasonable accommodation, in support of her disability discrimination cause of action.

---

[64]"[S]everal courts have concluded that breathing difficulties may constitute an impairment of a major life activity." *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1258 (10th Cir. 2001) (citing *Homeyer v. Stanley Tulchin Assocs., Inc.,* 91 F.3d 959, 962 (7th Cir.1996) (concluding that there were factual questions as to whether the plaintiff's chronic allergic rhinitis and sinusitus substantially limited her ability to breath and work); *Treadwell v. Dow-United Tech.,* 970 F. Supp. 962, 972 (M.D. Ala.1997) (finding "evidence sufficient to create a jury question as to whether her major life activity of breathing has been substantially impaired ... by her alleged sensitivity to chemicals"); *Whillock v. Delta Air Lines,* 926 F. Supp. 1555, 1561-63 (N.D. Ga.1995) (concluding that evidence of plaintiff's hypersensitivity to certain chemicals created a factual question as to whether her breathing was substantially impaired)).

Furthermore, Plaintiff relies upon a demotion that occurred on February 1, 2006, approximately ten months after Plaintiff filed her EEOC charge and over six months after she filed her Complaint in this Court, in support of her allegation that she suffered an adverse employment action with regard to her disability discrimination claim. While Plaintiff's EEOC charge sufficiently raised the charge of disability discrimination, it clearly did not raise this alleged adverse employment action, as it had not yet occurred. In an abundance of caution and noting that the outcome would remain unchanged, the Court considered such events in determining whether Plaintiff's hostile work environment claim could survive summary judgment. However, the Supreme Court has clearly differentiated hostile work environment claims from discrete discriminatory or retaliatory acts. *Morgan*, 536 U.S. at 115, 122 S. Ct. at 2073. As stated above, the Court will not consider the February 2006 demotion in determining whether Defendant's Motion for Summary Judgment should be granted because this motion relates to the April 15, 2005 EEOC charge.

The only other allegations of an adverse employment action that Plaintiff makes is that she "has missed work due to exaggerated odorous conditions in the workplace, and the adverse effects she experiences, most recently missing one week as a result of extensive painting throughout the new office facility," that other employees complained about the efforts to accommodate Plaintiff, and that tensions manifested in the form of ostracism of Plaintiff. However, Plaintiff does not allege that she received less pay, had to use vacation time, or that she was in any way damaged by "missing work." Additionally, Plaintiff fails to allege any specific dates associated with her missed work. As in *Baucom*, the conduct alleged by Plaintiff does not constitute an adverse employment action. 428 F.3d at 768. Furthermore, while the Court must

view the facts in a light most favorable to the Plaintiff, "mere allegations which are not supported

with specific facts are not enough to withstand [a] motion" for summary judgment.  *Id.* (quoting

*Klien v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999).  Therefore, summary judgment is also

appropriate on Plaintiff's claims of discrimination based upon disability.

### 3.  Reasonable Accommodation

"The ADA requires an employer to make *reasonable* accommodation to the known

physical or mental limitations of an otherwise qualified employee with a disability."  *Miller v.

Nat'l Cas. Co.*, 61 F.3d 627, 629 (8th Cir. 1995) (emphasis added) (citing 42 U.S.C. § 12112

(Supp. V 1993); 29 C.F.R. § 1630.9 (1994)).

Here, the record demonstrates that Defendant took exhaustive steps to remedy the

complaints made by the Plaintiff regarding the allegedly strong-scented environment.  As

discussed above, Defendant states that management made an affirmative effort to try to

accommodate the Plaintiff, and that the scents and smells would stop on occasion.[65]  Specifically,

employees were asked by management, as a whole and individually, to stop wearing perfume.[66]

Furthermore, employees were asked not to burn candles.[67]  On two specific occasions,

memos/signs were put up by the management requesting that employees stop wearing scents and

---

[65]*See* Exhibit A, Hawkins Dep. p. 61, Defendant's Motion. ("Q.  And she made an
affirmative effort to try to accommodate you?  A.  Uh-huh.")

[66]*See* Exhibit A, Hawkins Dep. p. 60, Defendant's Motion.

[67]*See* Exhibit A, Hawkins Dep. p. 60, Defendant's Motion.

burning candles.[68]  Management began using scent-free Lysol in the bathroom.[69]  Management offered to allow Plaintiff to move her office away from the persons she complained had the strongest scents and suggested that Plaintiff bring an air purifier to work, but Plaintiff chose voluntarily not to move her office or bring an air purifier.[70]  Additionally, when Plaintiff would make reports or requests to her superiors, complaining of scents, the reports were immediately investigated.[71]  The exhibits submitted by Defendant detailing the communications regarding Defendant's efforts to accommodate Plaintiff, which are summarized above, demonstrate that Defendant made reasonable accommodations for the Plaintiff.  Therefore, summary judgment is appropriate regarding Plaintiff's claim of lack of reasonable accommodation.

## IV.  Supplemental Motion for Summary Judgment - Retaliation Claim

Defendant's Supplemental Motion for Summary Judgment asserts that summary judgment on Plaintiff's retaliatory termination claim is appropriate because Plaintiff has failed to present evidence of a causal connection between her protected activity under Title VII and her termination.  Defendant further argues it had a legitimate, non-retaliatory reason for Plaintiff's termination.

Title VII prohibits retaliation against an employee who files charges of discrimination or

---

[68]*See* Exhibit A, Hawkins Dep. p. 52, Defendant's Motion; Exhibit D, Skaggs Aff., Defendant's Motion.

[69]*See* Exhibit B, Skaggs Dep. p. 52, Defendant's Motion.

[70]*See* Exhibit A, Hawkins Dep. p. , Defendant's Motion.

[71]*See* Exhibit A, Hawkins Dep. p. 78, Defendant's Motion; Exhibit B, Skaggs Dep. p. 48, Defendant's Motion.

assists others in opposing discrimination. 42 U.S.C. § 2000e-3(a); *Thompson*, 463 F.3d at 826. Title VII prohibits employers from retaliating against an employee who is engaged in a protected activity, which can be either opposing an act of discrimination made unlawful by Title VII ("the opposition clause"), or participating in an investigation under Title VII ("the participation clause"). 42 U.S.C. § 2000e-3(a) (emphasis added); *Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002).

Absent direct evidence of retaliation, the Court must apply the *McDonnell Douglas* three-part burden-shifting analysis to Plaintiff's retaliation claim. *Thompson*, 463 F.3d at 826. Under this framework, the Court must first determine whether Plaintiff has presented a prima facie case of retaliation. *Id.* To establish a prima facie case of retaliation, Plaintiff must present evidence that 1) she engaged in activity protected under Title VII; 2) an adverse employment action was taken against her; and 3) a causal connection between the two. *Id.* "The defense may rebut a plaintiff's claim by advancing a legitimate, 'non-retaliatory reason for the adverse employment action.'" *Gilooly*, 421 F.3d at 739. "If the defendant can show a legitimate reason, the plaintiff must show that the given reason was only a pretext for discrimination." *Id.* It is important to note that although Plaintiff did not succeed in her underlying claims, a plaintiff need not succeed on the underlying claims to establish a retaliation claim. *Id.*

First, Defendant argues that Plaintiff has failed to establish a causal connection, and none can be inferred, between the discharge, or other discipline, and the Plaintiff's initial charges made against the Defendant. The Court will assume, without deciding, that Plaintiff established a prima facie case of retaliation. Therefore, the Defendant must advance a legitimate, non-retaliatory reason for the adverse employment action.

In its Supplemental Motion for Summary Judgment, Defendant states that it had multiple legitimate, nondiscriminatory reasons for terminating the Plaintiff, including putting a client in danger, insubordination, and poor job performance.

In support of its arguments, Defendant states that Plaintiff was promoted to her most recent and last position as a receptionist on August 9, 2005, one month after the first EEOC charge was filed, receiving a *raise* in pay.[72] Defendant states that Plaintiff poorly performed her job, and admittedly acted insubordinate, uncooperative, and argumentative. Defendant relies on the Affidavit of Diane Skaggs, who states that Plaintiff had problems handling her new receptionist position, and was unable to "make it over the learning curve."[73] Specifically, Ms. Skaggs states that Plaintiff never learned the job requirements of the position, was unable to handle the HUD requirements in her job, or obtain HUD certification, and therefore was given receptionist-only pay because those were the only duties that remained.[74] Ms. Skaggs references a memorandum detailing the "reasons cited for the reduction in salary and elimination of the HUD duties" as:

(1) Failure to achieve HUD certification

(2) Failure to communicate with Fa. County staff HUD activities at the apartments

(3) Failure to correctly complete HUD paperwork and recertification

---

[72]*See* Exhibit A, Hawkins Dep. p. 82, Supplemental Motion; Exhibit B, Skaggs Aff. ¶ 9 and Exhibit 1, Supplemental Motion.

[73]*See* Exhibit B, Skaggs Aff. ¶ 10, Supplemental Motion.

[74]*See* Exhibit B, Skaggs Aff. ¶ 11, Supplemental Motion.

(4) Failure to correctly submit HUD rent and security deposits.[75]

Ms. Skaggs also states that even after reducing her workload, Plaintiff failed to follow objectives of the job in that she failed to pass on messages, failed to take care of required paperwork, had continued problems handling the computers, operating answering machines, and routing calls, including emergency phone calls, and gave inaccurate information to referral sources and to employees.[76] Ms. Skaggs also references several complaints from employees of the Defendant.[77]

Defendant submits the Affidavit of Christy Johnson, who states that Plaintiff complained to her that something needed to be fixed/changed on her computer, but that Plaintiff would not provide her password to allow Ms. Johnson access to Plaintiff's computer.[78] Lisa Teaff states in her Affidavit that due to Plaintiff's lack of proficiency, she "spent two full weeks back-tracking, and in essence, re-doing months of the Plaintiff's work."[79] Ms. Teaff states, "Plaintiff was, generally, a poor employee who did not recall information, and could not perform her job duties,

---

[75]*See* Exhibit B, Skaggs Aff. Exhibit 8, Supplemental Motion.

[76]*See* Exhibit B, Skaggs Aff. Exhibits 2, 3, 4, 5, 6, & 9, Supplemental Motion.

[77]*See* Exhibit B, Skaggs Aff. Exhibits 2, 3, 4, 5, 6, & 9, Supplemental Motion.

[78]*See* Exhibit C, Johnson Aff. ¶ 6-7, Supplemental Motion. *See also* Exhibit A, Hawkins Dep. p. 75, 107, Supplemental Motion (stating that it was not rude to tell Ms. Johnson that she was not going to give Ms. Johnson her password again); Exhibit B, Skaggs Aff. ¶ 13 and Exhibit 4, Supplemental Motion (stating that Plaintiff was insubordinate regarding computers and taking directions, and cites a document alleging that Plaintiff was "[a]rgumentative and uncooperative when requested to submit password to Technology Administrator, requiring intervention of Program Director to insist compliance.").

[79]*See* Exhibit D, Teaff Aff. ¶ 6, Supplemental Motion. *See also* Exhibit C, Johnson Aff. ¶ 8, Supplemental Motion.

accurately. The inability of the Plaintiff to perform her own job placed a significant burden on me."[80]

Ms. Skaggs states that as a result of these issues, Plaintiff was placed on probation on June 5, 2006, met with a member of the management team, and was given a corrective action plan.[81] The probationary period was to run from June 5, 2006 through July 5, 2006.[82] The corrective action plan, dated June 7, 2006, specifically states, "The 'designated screener' is to be contacted initially concerning emergencies if unavailable after a reasonable amount of time, then the 'back up screener' is to be contacted and finally Lou Strain."[83] Ms. Skaggs reports that during Plaintiff's probation, it was reported that:

16. Plaintiff put one of our most ill clients in danger by failing to properly communicate and handle (pursuant to the corrective action plan) his lack of air-conditioning on June 13 and 14, 2006.

17. That said client is schizophrenic and, especially, sensitive to heat. He takes a significant amount of medication, making extreme heat dangerous, causing sickness, or even death. He lives in apartments run by the Defendant and is given the Plaintiff's desk number to call in case of emergency.

18. That this endangerment of a client, who was totally dependent on Defendant for his needs, was the reason the Plaintiff was terminated. Specifically, as per the Policy and Procedures Manual, the reason given for termination was "action detrimental to client."[84]

---

[80]*See* Exhibit D, Teaff Aff. ¶ 5, Supplemental Motion.

[81]*See* Exhibit B, Skaggs Aff. Exhibits 4 and 5, Supplemental Motion.

[82]*See* Exhibit B, Skaggs Aff. Exhibit 4, Supplemental Motion

[83]*See* Exhibit B, Skaggs Aff. Exhibit 5, Supplemental Motion.

[84]*See* Exhibit B, Skaggs Aff. ¶ 16-18 and Exhibit 7, Supplemental Motion.

According to Lisa Teaff's Affidavit, Ms. Teaff had to deal with Defendant's client, after he was found without air conditioning by Maria Polk.[85] Ms. Teaff reports that on June 13, 2006, Defendant's client informed Plaintiff that his air conditioning was not working, but he was told by Plaintiff that "Rhomie was on vacation and there wasn't anything she could do."[86] Plaintiff acknowledged that she considered the client's circumstance an emergency, and that it was her duty to receive such calls and dispatch them to the appropriate person.[87] Ms. Teaff states that although Plaintiff had access to her cell phone number for emergencies, after hours, and any time she was out of the office, and Plaintiff had contacted her in the past on her cell phone, Plaintiff failed to notify her of the situation despite the voicemail message indicating that she was out of the office and the instructions in the corrective action plan.[88]

The next day, on June 14, 2006, the same client called the Plaintiff again regarding his lack of air conditioning. Plaintiff states that in response she e-mailed Ms. Teaff and left a message on her land line office phone.[89] Ms. Teaff received a phone call from Maria Polk, case manager, stating that Defendant's client had no air conditioning.[90] Ms. Teaff was concerned because of the risks associated with the client's medications in high temperature and humidity,

---

[85] *See* Exhibit D, Teaff Aff. ¶ 3, Supplemental Motion.

[86] *See* Exhibit D, Teaff Aff., Memo dated 06-21-06, Supplemental Motion.

[87] *See* Exhibit A, Hawkins Dep. p. 65, Supplemental Motion.

[88] *See* Exhibit D, Teaff Aff., Memo dated 06-21-06, Supplemental Motion.

[89] *See* Exhibit A, Hawkins Dep. p. 59-60, Supplemental Motion.

[90] *See* Exhibit D, Teaff Aff., Memo dated 06-21-06, Supplemental Motion

such as heat exhaustion and heat stroke.[91]  Ms. Teaff returned to the office on June 14, 2006, at

approximately 3:30 p.m., and found an e-mail from Plaintiff sent on June 13, 2006 at 4:08 p.m.[92]

and a voicemail from Plaintiff left at approximately 2:30 p.m.[93] on June 14, 2006 at 4:08 p.m.

reporting the issue.[94]

On June 21, 2006, Plaintiff was discharged from her employment.  Defendant informed

Plaintiff that the reason for her discharge was failure "to follow a corrective action plan by

placing a client at risk."[95]  Defendant's disciplinary policy states:

> Acts of willful, deliberate or serious misconduct will result in immediate
> discharge and will not be subject to the progressive discipline policy.  Examples
> of such conduct include . . . insubordination . . . or any other action considered
> detrimental to clients, employees or Center.
>
> . . .
>
> During or following disciplinary probation, conduct of the same nature or similar
> seriousness may result in termination.
>
> . . .
>
> In the event the above attempts to effect corrective action in the employee's
> performance of their job duties or a violation of CAI's policy continues to occur,
> then the President/CEO has the option to terminate the employment of the
> individual.[96]

---

[91]See Exhibit D, Teaff Aff., Memo dated 06-21-06, Supplemental Motion

[92]See Exhibit D, Teaff Aff., Memo dated 06-21-06, Supplemental Motion

[93]It appears that this voicemail was left on June 14, 2006. See Exhibit A, Hawkins Dep. p.
59-60, Supplemental Motion.

[94]See Exhibit D, Teaff Aff., Memo dated 06-21-06, Supplemental Motion

[95]See Exhibit F, EEOC charge dated 7/10/06, Supplemental Motion.

[96]See Exhibit B, Skaggs Aff. Exhibit 7, Supplemental Motion.

As Defendant has proffered a legitimate, non-retaliatory reason for terminating Plaintiff, the burden shifts to Plaintiff to present evidence that Defendant's reason was pretextual. Plaintiff asserts that the following support the pretextual nature of Defendant's reason for Plaintiff's termination:

1. No other of defendant's employees has been placed on "probation" either as a new or promoted employee beyond the first six months of having been hired into position.

2. Defendant's decision to place Ms. Hawkins on "probation" was contrary to their own policy; *See* Exhibit Two;[97]

3. Placing Ms. Hawkins on "probation" allowed defendant to summarily dismiss her from employment rather than following their progressive discipline policy;

4. None of the allegations against Ms. Hawkins concerning her failure to take messages, or improper handling of calls are substantiated by reference to specific instances; *See* Mary Hawkins' Deposition Tr. Pp. 22; 25-27; 30-33; 45-46.

5. The reason(s) given for Ms. Hawkins termination were not true. *See* Mary Hawkins' Deposition Tr. Pp. 53-67.

Plaintiff offers no support for her first assertion that Plaintiff was the only employee placed on probation beyond the first six months of entering a position. Also, Plaintiff offers no proof that the "Employee Probation" policy was in effect at the time of her promotion and termination. Even assuming Plaintiff had been on the "probation" referenced in the "Employee Probation" policy during the first six months of her new position, it is clear that the "probation" that Plaintiff was placed on, which contributed to her termination, was the probation referenced

---

[97]The Court notes that Plaintiff failed to properly label her exhibits. However, it appears that Plaintiff is referencing Docket No. 55-4.

in the "Disciplinary Process" policy,[98] and that the decision to place the Plaintiff on disciplinary probation was not contrary to Defendant's policy. Plaintiff received a written warning on CAI form number 713 on June 5, 2006, as provided for in paragraph 3 of the "Disciplinary Process" policy for "Failure to perform job requirements," "Action detrimental to clients," and "Action detrimental to employees."[99] She was placed on probation for a thirty-day period, from June 5, 2006 through July 5, 2006, as provided for in paragraph 4 of the "Disciplinary Process" policy.[100] Finally, as provided for in paragraph 5 of the policy, which "precludes a return to probationary status for [the] same infraction after the initial probationary period ends," Plaintiff was terminated during her disciplinary probation due to "action detrimental to client," conduct of the same nature of similar seriousness. While Plaintiff alleges that the allegations against her concerning her failure to take messages, or improper handling of calls are unsubstantiated by reference to specific instances, Plaintiff does not refute the allegations concerning the problems in operating the answering machine,[101] problems surrounding submission of Plaintiff's password to the Technology Administrator,[102] and other reasons cited for probation.[103]

Finally, the argument that "[t]he reason(s) given for Ms. Hawkins termination were not true," is not supported by the record evidence. In her deposition, Plaintiff admits that she

---

[98]*See* Exhibit B, Skaggs Aff. Exhibit 7, Supplemental Motion.

[99]*See* Exhibit B, Skaggs Aff. Exhibit 4, Supplemental Motion

[100]*See* Exhibit B, Skaggs Aff. Exhibit 4, Supplemental Motion

[101]*See* Exhibit B, Skaggs Aff. Exhibit 9, Supplemental Motion

[102]*See* Exhibit C, Johnson Aff. and Exhibits, Supplemental Motion

[103]*See* Exhibit B, Skaggs Aff. Exhibit 9, Supplemental Motion

considered the client's June 13, 2006, circumstance an emergency, and that it was her duty to receive such calls and dispatch them to the appropriate person.[104] Plaintiff also admits that the only steps she took to resolve the situation were :(1) sending an e-mail to Ms. Teaff on the day the call came in, to which she received no response, and (2) sending a second e-mail to Ms. Teaff and leaving a voicemail on Ms. Teaff's land line office phone the following day, after the client called again.[105] Plaintiff did not follow up with Ms. Teaff on June 13, 2006, despite the fact that less than one week before the incident in question, Plaintiff signed a "Corrective Action Plan," stating, "The 'designated screener' is to be contacted initially concerning emergencies if unavailable afer a reasonable amount of time, then the 'back up screener' is to be contacted and finally Lou Strain."[106] Instead, Plaintiff waited until the following day, after receiving another complaint from the client, to attempt to contact Ms. Teaff again.

The Court is compelled to conclude that Plaintiff has failed to present sufficient evidence from which the fact finder could determine that the proffered reasons for termination were pretext for illegal retaliation. Plaintiff has failed to dispute that there were problems with her job performance. She may disagree with the seriousness of the offense preceding her termination and the Defendant's response, but this is insufficient to create a submissible retaliation claim.

"[T]he employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments

---

[104]*See* Exhibit A, Hawkins Dep. p. 65, Supplemental Motion.

[105]*See* Exhibit A, Hawkins Dep. p. 59-60, Supplemental Motion.

[106]*See* Exhibit B, Skaggs Aff. Exhibit 5, Supplemental Motion

made by employers, except to the extent that those judgments involve intentional discrimination. Title VII prohibits intentional discrimination based on certain, discreet classifications; it does not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices." *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) (internal citations omitted). Furthermore, the Eighth Circuit has repeatedly held that insubordination and violation of company policy are legitimate reasons for termination. *See id.; Ward v. Procter & Gamble Paper Prods. Co.,* 111 F.3d 558, 560 (8th Cir. 1997) (employee terminated for striking a co-worker); *Price v. S-B Power Tool,* 75 F.3d 362, 365-66 (8th Cir. 1996) (employee terminated for excessive absenteeism); *Lidge-Myrtil v. Deere & Co.,* 49 F.3d 1308, 1310-11 (8th Cir. 1995) (employee not chosen for promotion because of poor relationship with co-workers and violation of company policy); *Miner v. Bi-State Dev. Agency,* 943 F.2d 912, 913-14 (8th Cir. 1991) (employee terminated for insubordination and violating various company policies).

Here, Plaintiff has failed to demonstrate that Defendant's legitimate, non-retaliatory reason for her termination was a pretext for discrimination. On this evidence, no reasonable jury could so find. Therefore, summary judgment is appropriate on Plaintiff's claim of retaliatory termination.

Accordingly,

FOR THE REASONS STATED ABOVE, IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment (Docket # 15) and Supplemental Motion for Summary Judgment (Docket # 48) be, and are hereby, GRANTED.

IT IS SO ORDERED THIS 26th day of March, 2007.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE